UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VAN SWEDEN JEWELERS, INC.,

       Plaintiff,                            Case No. 1:10-cv-253

v                                               HON. JANET T. NEFF

101 VT, INC., *et al.*,

       Defendants.
_____/

## OPINION

       Plaintiff Van Sweden Jewelers, Inc., a Michigan jewelry design and manufacturing company, initiated this purported class action against Defendant 101 VT, Inc., a California jewelry design and manufacturing company, alleging that Defendants faxed Plaintiff an unsolicited advertisement and thereby violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.  Now pending before the Court is Defendants' Motion for Summary Judgment (Dkt 100), to which Plaintiff filed a response (Dkt 105), and Defendants filed a Reply (Dkt 109).  Having fully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d).  For the following reasons, the Court denies Defendants' motion.

### I. BACKGROUND

**A.**       **Factual Background**

       Defendant Vatche Keledjian is the owner and president of Defendant 101 VT, Inc., which conducts business as "Viachi" (Dkt 101-1, Dfs.' Statement of Material Facts [DSMF] ¶ 2).

According to Defendants, Vatche Keledjian is 101 VT's "only employee," and Defendant Vahe Keledjian is an "independent contractor" (*id.* ¶¶ 11, 59, 82).

Plaintiff alleges that on March 22, 2007, Business to Business Solutions (B2B), a fax advertising business based in New York and run by Caroline Abraham (Abraham), received a request to fax an advertisement for Defendant 101 VT, Inc.'s jewelry services (Dkt 108, Pl.'s Statement of Additional Facts [PSOAF] ¶¶ 5, 8). According to Plaintiff, Defendant 101 VT, Inc. and B2B communicated several times between March 22, 2007 and April 23, 2007, agreeing upon the advertisement's design, the number of advertisements B2B would send on 101 VT, Inc.'s behalf, and the amount 101 VT, Inc. would pay for the advertisements (*id.* ¶ 9). Plaintiff alleges that the B2B documents specifically reference "Vatche" or "Attention: Vatche" or "Viachi" as the person with whom to communicate regarding the mass fax campaign (*id.* ¶ 49).

Further, Plaintiff alleges that on April 23, 2007, B2B received a check for $420.00 from "101 VT, INC. DBA VIACHI/14 V.K.," dated April 17, 2007, and addressed to "Business to Business Solutions" (PSOAF ¶ 10). The check indicated "U012407" in the memo field, which Plaintiff alleges was the "ClientID" that B2B had assigned to Defendants (*id.* ¶ 11). According to Plaintiff, Defendants instructed B2B to wait until May 8, 2007 to send the 101 VT, Inc. advertisement by fax (*id.* ¶ 12).

Plaintiff alleges that on May 8, 2007, B2B transmitted the 101 VT, Inc. advertisements by fax and, that same day, deposited the $420.00 check from 101 VT, Inc. (PSOAF ¶ 13). Plaintiff further alleges that B2B transmitted the faxes to fax numbers in a database it had purchased from InfoUSA (*id.* ¶ 14). According to Plaintiff, no one sought or received prior express permission or invitation ("consent") from the recipients before sending the faxes (*id.* ¶ 15). Plaintiff's expert,

2

Robert Biggerstaff, reviewed B2B's archived business records, including computer files identifying 4,989 recipients of Defendants' advertisement by fax (*id.* ¶¶17-21). The B2B documents reflect one successful transmission to Plaintiff's fax number on May 8, 2007 (*id.* ¶ 48).

Defendants, in contrast, allege that "[i]n or about March 2007, [Vatche] Keledjian requested Vahe Keledjian, an independent contractor, to look for a company designing flyers and to order such flyers to hand out and promote 101 VT's products in the upcoming (June 2007) jewelry show in Las Vegas, Nevada," that "Vahe Keledjian ordered the flyers and gave them to [Vatche] Keledjian," and that "[Vatche] Keledjian handed out the flyers at Las Vegas jewelry show in June 2007" (DSMF ¶ 59). Defendants agree that B2B worked with Macaw (also known as Maxileads), a Romanian company, to send fax advertisements in the United States (*id.* ¶ 28). However, Defendants emphasize that "[t]here is no facsimile machine printout confirming the receipt of the fax by Plaintiff" and "Plaintiff's fax companies, AT&T and Earthlink did not find any evidence of any fax" (DSMF ¶¶ 25, 26). Defendants also allege that "V. Keledjian and 101 VT did not know that it is unlawful to send unsolicited fax advertisement to any recipient without prior express invitation or permission and without [an] existing business relationship" and that "[t]hey have never acted in knowing and wilful violation of the TCPA" (*id.* ¶ 24).

**B.     Procedural Posture**

On March 15, 2010, Plaintiff initiated this purported class action against Defendant 101 VT, Inc., seeking to challenge Defendant's "policy and practice of faxing unsolicited advertisements" under the TCPA (Dkt 1). The statute provides a private right of action that permits a plaintiff to seek an injunction preventing future violations of the act and to recover actual monetary loss or $500,

whichever is greater. 47 U.S.C. § 227(b)(3). Plaintiff seeks statutory damages and an injunction against Defendants from committing additional violations (2d Amend. Compl., Dkt 48 ¶ 30).

On May 18, 2010, Plaintiff filed its First Amended Complaint to add Defendant Vatche Keledjian (Dkt 3). Plaintiff alleges that Defendant Vatche Keledjian "approved, authorized and participated in the scheme to broadcast advertisements by facsimile by:

    A.    directing a list to be purchased or assembled;

    B.    directing and supervising employees or third parties to send the advertisements by fax;

    C.    creating and approving the form of advertisements to be sent;

    D.    determining the number and frequency of the facsimile transmissions; and

    E.    approving or paying the employees or third parties to send the advertisements by facsimile transmission"

(*id.* at ¶ 9). On March 9, 2011, Plaintiff filed a Second Amended Complaint to add Defendant Vahe Keledjian, whom Plaintiff alleges is also an officer and shareholder of 101 VT, Inc. (Dkt 48 ¶ 9).

On August 22, 2011, pursuant to the Preliminary Case Management Order (Dkt 23) issued by the Magistrate Judge, Plaintiff filed its Motion to Certify Class (Dkt 67), to which Defendants filed a response in opposition (Dkt 74), and Plaintiff filed a Reply (Dkt 75). On October 7, 2011, with leave of the Court, Plaintiff served Defendant Vahe Keledjian by publication (Dkt 76). Defendant Vahe Keledjian subsequently failed to plead or otherwise defend as required by the Federal Rules of Civil Procedure, and a default was entered against him on November 15, 2011 (Dkt 80).

On November 25, 2011, Defendants filed a request for a Pre-Motion Conference, proposing to file a motion for summary judgment (Dkt 81).[1] Following a Pre-Motion Conference on January 5, 2012, the Court issued a briefing schedule, permitting the parties to brief the instant motion and indicating that it would postpone a ruling on the matter of class certification (Dkt 84). Deciding Defendants' summary judgment motion before Plaintiff's class certification motion is, in this Court's opinion, in the interest of overall efficiency. *See* FED. R. CIV. P. 23(c)(1) (requiring only that courts decide motions for class certification "at an early practicable time"); 7AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1785.3 (3d ed. 2005) ("The time at which the court finds it appropriate to make its class-action determination may vary with the circumstances of the particular case.").

## II. MOTION STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Once the moving party has made such a showing, the burden is on the nonmoving party to demonstrate the existence of an issue to be litigated at trial. *Slusher v. Carson*, 540 F.3d 449, 453 (6th Cir. 2008). The Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Slusher,* 540 F.3d at 453; *Harbin-Bey v.*

---

[1]Defendants' November 25, 2011 Pre-Motion Conference request was their fourth such request. This Court denied their first three requests without prejudice (Orders, Dkts 17, 40, 56).

*Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The ultimate inquiry is "whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### III. ANALYSIS

Defendants present four arguments in support of their motion for summary judgment: (1) their challenge to the quality and admissibility of Plaintiff's evidence; (2) their argument that Defendant Vatche Keledjian has not submitted to the Court's jurisdiction, nor is he personally liable for the TCPA violations alleged in this case; (3) their argument that the advertisements fall within two exceptions to the TCPA; and (4) their challenge to this Court's exercise of jurisdiction, either on a diversity or federal-question basis. Defendants also argue that if this Court rejects their arguments for summary judgment, then this Court should apply the forum non conveniens doctrine and transfer the case to New York.

**A.     State of the Evidence**

The TCPA prohibits the use of "any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

Plaintiff claims that it has recovered contemporaneously archived and electronically stored fax transmission logs identifying the particular fax numbers that received Defendants' fax, including Plaintiff's fax number (Dkt 105 at 2). Defendants argue that summary judgment in their favor is warranted because the fax transmission logs are inadmissible for four reasons. *See* FED. R. CIV. P.

56(c)(2) (permitting a party to object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").

1.      *Doctrine of Unclean Hands*

First, Defendants contend that Plaintiff's evidence is inadmissible because Plaintiff's counsel enters the court with unclean hands (Dkt 101 at 11). According to Defendants, it is "an established fact that Plaintiff's attorneys acquired the Data in B2B hard drive and/or the back-up discs through deceit and lies," and it is "undisputed" that Plaintiff's attorneys misled Abraham (*id.* at 11-12, citing *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011)).

Plaintiff responds that the matter Defendants raise is, in fact, "highly disputed," and that other district courts have rejected similar charges of misuse of confidential data (Dkt 105 at 6, citing *CE Design Ltd. v. CY's Crabhouse North, Inc.*, No. 07-cv-5456, 2010 WL 3327876, at *3 (N.D. Ill. Aug. 23, 2010) (finding no good cause for keeping the B2B materials confidential)). *See also Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09-C-5601, 2011 WL 4628744, at *4 (N.D. Ill. Sept. 30, 2011) (holding that "because the data is not confidential, there is no bar to its use in this litigation and Plaintiff will not be estopped from using data from the hard drive in this lawsuit").[2]

Defendants' unclean-hands argument, which focuses exclusively on the fax transmission logs, fails to address the other evidence Plaintiff has provided in support of its TCPA claim. In addition to providing the fax transmission logs, Plaintiff has also provided Abraham's deposition testimony, Abraham's sworn declaration, and B2B documents pertaining to the advertising job of

---

[2]This Court also found no good cause for keeping the fax transmission logs confidential (Order, Dkt 115).

101 VT, Inc. (Dkts 105-2, 105-3). Defendants do not address whether, or how, the unclean hands doctrine would preclude admission of this evidence.

Moreover, the three cases Defendants cite in support of their argument do not support application of the unclean-hands doctrine here. In the first case Defendants cite, *Mudge v. Macomb County*, 580 N.W.2d 845, 856 n.22 (Mich. 1998), the Michigan Supreme Court declined to consider an argument for application of the unclean-hands doctrine, finding the argument was prematurely made. In the second case, *Creative Montessori,* the question before the Seventh Circuit concerned class certification, specifically, whether the representative parties would fairly and adequately protect the interests of the class. *Creative Montessori* does not address admission of evidence or application of the unclean-hands doctrine. 662 F.3d at 919 (remanding with directions that the district court re-evaluate whether class counsel will adequately represent the class). The third case, *Nardone v. United States*, 308 U.S. 338 (1939), is a criminal case concerning the fruit-of-the-poisonous tree doctrine within the context of the Communications Act, 47 U.S.C. § 605.

In short, Defendants have not demonstrated that the unclean hands doctrine, even if it applies, helps meet their burden of showing that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law.

2.   *Business Records Exception*

Second, Defendants argue that Plaintiff's fax transmission records are inadmissible because the records are hearsay and do not fall under the hearsay exception rule for the records of a regularly conducted business activity, FED. R. EVID. 803(6), where (1) Caroline Abraham does not know (a) who entered the data, (b) whether the data entry was made at or near the time, (c) from information transmitted by a person with knowledge, (d) if the data was kept in the course of a regularly

conducted business activity; (2) she does not know who, how, when the data was collected, entered, organized or maintained; and (3) the data is unreliable, because at least four people had access to change, alter and modify the data (Dkt 101 at 14).

Under Federal Rule of Evidence 803(6), a record of acts or events is admissible upon the testimony of the custodian or other qualified witness showing that the record was made at or near the time by a person with knowledge, if it was kept in the regular course of a regularly conducted business activity and it was the regular practice of that business activity to make such records. FED. R. EVID. 803(6).

Plaintiff offers the sworn declaration of Caroline Abraham as foundation for admissibility of the fax logs. Plaintiff rejects Defendants' characterization of Abraham's position as "merely a secretary at B2B" (DSMF ¶ 27), contending that Abraham was instead "firmly in charge of the B2B/Macaw operations, instructing her cohorts about what advertisements to send, when to send them, where to send them, and in what amount to send them" (PSOAF ¶ 32). Further, according to Plaintiff, Abraham constructed and regularly maintained the Microsoft Access database file, a database called "Fax Clients," which contained numerous identifiers used to document and track the progress of each transaction with every client (PSOAF ¶ 31). Plaintiff argues that like the district court in *CE Design Ltd. v. CY's Crabhouse*, 259 F.R.D. 135, 139-40 (N.D. Ill. 2009), this Court should find that B2B's regularly kept business records do not raise any special reliability concerns where B2B is "a nonparty without a financial stake in the case" (Dkt 105 at 9).

This Court agrees that Abraham can sufficiently establish the foundation for admissibility under the business records exception to the hearsay rule. FED. R. EVID. 803(6). "'Rule 803(6) does not require that the custodian personally gather, input, and compile the information memorialized

9

in a business record.'" *United States v. Salgado*, 250 F.3d 438, 451-52 (6th Cir. 2001) (quoting *United States v. Weinstock*, 153 F.3d 272, 276 (6th Cir. 1998)). The custodian of the records need not be in control of or have individual knowledge of the particular corporate records, but need only be familiar with the company's recordkeeping practices. *Id*. at 452 (citing *In re Custodian of Records of Variety Distrib., Inc.*, 927 F.2d 244, 248 (6th Cir.1991)). Likewise, "[t]o be an 'other qualified witness,' it is not necessary that the person laying the foundation for the introduction of the business record[s] have personal knowledge of their preparation." *Id.* (quoting *Dyno Constr. Co. v. McWane, Inc.*, 198 F.3d 567, 575-76 (6th Cir. 1999)). Defendants' challenges to the accuracy of the fax logs concern the weight of the evidence, rather than its admissibility. *See, e.g., CE Design Ltd.*, 2010 WL 3327876, at *3 (citing *Holtzman v. Turza*, No 08-C-2014, 2009 WL 3334909, at *3 (N.D. Ill. Oct.14, 2009), and leaving for trial any issue about the accuracy of the fax logs themselves). The Court also rejects as speculative Defendants' argument that someone could have altered the hard drive data.

In sum, Defendants' hearsay argument does not help Defendants meet their burden of showing that no genuine issue of material fact exists, nor does the argument demonstrate that they are entitled to judgment as a matter of law.

3.   *Authentication*

Next, Defendants argue that Plaintiff's evidence is inadmissible because the fax transmission logs lack the foundation to satisfy the requirements of FED. R. EVID. 901(a) where Caroline Abraham does not have personal knowledge about the data and how it was collected, stored, or maintained (Dkt 101 at 13). In general, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what

10

the proponent claims it is." FED. R. EVID. 901(a). Here, where Plaintiff can establish a foundation showing that the evidence satisfies the requirements of Rule 803(6), the Rule 901 authentication requirements are also met, and no additional foundation is necessary to admit the evidence. *See* 5 WEINSTEIN'S FEDERAL EVIDENCE § 900.07[1][b][*i*] (2012). Hence, for the reasons previously stated in rejecting Defendants' hearsay argument, Defendants' authentication argument similarly fails.

4.     *No Evidence of Receipt*

Last, Defendants contend that there is no admissible evidence of any fax transmission to Plaintiff from Defendants inasmuch as there is no printout confirming that a fax was sent to Plaintiff (Dkt 101 at 13-14). Defendants assert that their telecommunication companies (Verizon and Earthlink) did not find any evidence of a fax from Defendants or B2B to Plaintiff (*id.*).

According to Plaintiff, the evidence in support of its case is "overwhelming and unrebutted" (Dkt 105 at 11). Specifically, the fax logs obtained from B2B about Defendants' fax campaign reflect a successful transmission to Plaintiff's fax number on May 8, 2007 (*id.*; PSOAF ¶ 48).

Again, the TCPA makes it unlawful to *send* an unsolicited advertisement to a telephone facsimile machine. *See* 47 U.S.C. § 227(b)(C). Plaintiff need not identify the fax numbers that successfully received a transmission. Rather, to prevail on a claim under the TCPA, a plaintiff must show that the defendant: "'(1) used a telephone facsimile machine, computer or other device to send a facsimile; (2) the facsimile was unsolicited; and (3) the facsimile constituted an advertisement.'" *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008) (quoting *Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 745 (N.D. Ill. 2007)). Hence, Defendants' contention that Plaintiff lacks evidence of receipt of the fax, even if true, does not indicate they are entitled to judgment as a matter of law where Plaintiff has evidence of transmission of the fax.

Moreover, the parties' divergent views only serve to further demonstrate the existence of a genuine issue of material fact for trial.

**B.     Defendant Vatche Keledjian**

Defendants argue that Defendant Vatche Keledjian is entitled to summary judgment because (1) this Court cannot properly exercise personal jurisdiction over him, and (2) he is not individually liable for the corporation's conduct.

1.     *Personal Jurisdiction*

Defendants argue that this Court cannot properly exercise personal jurisdiction over Defendant Vatche Keledjian where Vatche Keledjian has (1) continuously resided in California for the past twenty years, and (2) neither he nor his company has ever (a) owned, leased, used or possessed any real or tangible property situated within the state of Michigan; (b) contracted to insure a person, property, or risk located within Michigan; (c) entered into a contract for services to be rendered or for material to be furnished in Michigan; (d) entered into any transaction of any business in Michigan; or (e) acted as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having principal place of business within Michigan (Dkt 101 at 15).

Plaintiff does not address Defendants' personal jurisdiction argument.

Defendants' personal-jurisdiction argument is waived based on Defendant Vatche Keledjian's participation in this litigation. "Because 'the requirement of personal jurisdiction flows from the Due Process Clause and protects an individual liberty interest,' *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006), 'an individual may submit to the jurisdiction of the court by appearance.'" *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (citing *Ins. Corp. of Ireland,*

*Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). The voluntary use of certain district court procedures may serve as constructive consent to the personal jurisdiction of the court. *Id.* "[T]hose submissions, appearances and filings that give '[P]laintiff a reasonable expectation that [Defendants] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking,' result in waiver of a personal jurisdiction defense." *Id*. at 519 (citation omitted).

Here, Defendant Vatche Keledjian sent this Court a letter on May 19, 2010, requesting an extension of time to file responsive pleadings (Dkt 4); stipulated in June 2012 to accepting service of the First Amended Complaint (Dkt 7 at ¶ 7); filed Answers to the First Amended and Second Amended Complaints in September 2010 and March 2011, respectively (Dkts 18, 50); engaged in a substantial exchange of discovery with Plaintiff during the winter and spring of 2012; and, of course, filed the instant summary judgment motion on March 26, 2012 (Dkt 100). In sum, Vatche Keledjian has long since waived any challenge he had to this Court's exercise of personal jurisdiction over him.

2.  *Individual Liability*

Defendants also argue that this Court should dismiss Defendant Vatche Keledjian from this case where there is no evidence that Defendant Vatche Keledjian, in his individual capacity or as the president of 101 VT, Inc. approved or authorized or participated in the scheme to broadcast advertisement by facsimile by (a) directing and supervising employees or third parties to send faxes, (b) directing a list to be purchased or assembled, (c) determining the number and frequency of the facsimile transmission, (d) approving or paying the employees or third parties, or (e) creating or

ordering the advertisement (Dkt 101 at 16). Defendants also argue that Plaintiff has no evidence to pierce the corporate veil (*id.*).

In response to this argument, Plaintiff argues that there is at least a genuine issue of material fact as to Vatche Keledjian's knowledge and participation in the TCPA violations at issue (Dkt 105 at 12). Plaintiff contends that it has evidence that Vatche is an officer, director and shareholder of 101 VT, Inc. and that he approved, authorized and participated in the scheme to broadcast advertisements by facsimile by directing a list to be purchased or assembled, directing and supervising employees or third parties to send the advertisements by fax, creating and approving the form of advertisements to be sent, determining the number and frequency of the facsimile transmissions, and approving or paying the employees or third parties to send the advertisements by facsimile transmission (*id.*; Dkt 48, 2d Amend. Compl. ¶ 9). Moreover, Plaintiff points out that a corporate officer is not necessarily shielded from liability for his actions (Dkt 105 at 13).

As Plaintiff points out, courts that have addressed the personal-liability issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA where they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001); *see also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) (reasoning, in pertinent part, that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); *Baltimore–Washington Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 745 (D. Md. 2008) (observing that if the defendants, who were the same defendants as in *American Blastfax,* "actually committed the conduct that violated the TCPA, and/or ... actively oversaw and directed the conduct," they could be held individually liable for the statutory

14

violations); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. CIV. A. 01-0004360, 2003 WL 21384825, at *6 (D.C. Super. Apr. 16, 2003) (holding that corporate executives were personally liable because they "set company policies and over[saw] day-to-day operations" and were "clearly involved in the business practices" that violated the TCPA).

Moreover, Plaintiff has demonstrated that Vatche Keledjian's knowledge of and participation in the alleged TCPA violations are issues to be litigated at trial. *See Slusher,* 540 F.3d at 453. If Plaintiff can prove that Defendant Vatche Keledjian directly participated in or authorized the statutory violations, Vatche Keledjian may be personally liable under the TCPA. Accordingly, the claims against him will not be summarily dismissed.

**C.     TCPA Exceptions**

The TCPA prohibits the practice of sending unsolicited fax advertisements, unless the sender of the fax has an "established business relationship" (EBR) with the recipient. 47 U.S.C. § 227(b)(1)(C). The regulations adopted by the Federal Communications Commission (FCC) require solicited fax advertisements, or fax advertisements "sent to a recipient that has provided prior express invitation or permission," to be accompanied with an opt-out notification. 47 C.F.R. § 64.1200(a)(3)(*iii*).

Defendants attempt to rely on both the consent and EBR aspects of the exception to liability under the TCPA. Defendants argue that even assuming arguendo they authorized B2B's mass fax campaign, there were existing business relationships with the recipients (Dkt 101 at 15-16). Additionally, Defendants contend that the fax advertisements that were sent contained a notice allowing the recipients to opt out of receiving faxes as required under 47 U.S.C. §227(b)(2)(D) (*id.* at 16).

Plaintiff responds that Defendants have offered no evidence showing that they obtained prior express invitation or permission from any putative class member, nor that they had an established business relationship with any putative class member (Dkt 105 at 14). In fact, Plaintiff points out that Defendants have admitted that they did not have Plaintiff's prior consent nor an EBR with Plaintiff (*id.,* citing PSOAF ¶¶ 44-47).

The FCC has observed that "[c]ommentators that discussed this issue agree that a sender should have the obligation to demonstrate that it complied with the rules, including that it had the recipient's prior express invitation or permission." *In re: Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 21 F.C.C.R. 3787, 3812 (April 6, 2006). The type of "blast fax" list at issue here, allegedly culled from a database B2B purchased from InfoUSA, by its very nature, can result in blind solicitations lacking consent or EBR. Defendants' bald argument to the contrary does not help Defendants meet their burden of showing that no genuine issue of material fact exists or that they are entitled to judgment as a matter of law on this basis.

**D.     Subject-Matter Jurisdiction**

Defendants next argue that this matter should be dismissed because this Court has neither diversity jurisdiction nor federal-question jurisdiction in this case.

1.     *Diversity Jurisdiction*

In support of its diversity-jurisdiction challenge, Defendants argue that because Plaintiff would not be able to maintain a class action in state court under MICH. CT. R. 3.501(a)(5), Plaintiff should not be allowed to "circumvent state substantive law" by attempting to bring this cause of action in federal court under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332 (Dkt 101 at 17, citing *Bonime v. Avaya, Inc.*, 547 F.3d 497 (2d Cir. 2008)).

Defendants' argument is misplaced. *Bonime* and progeny concern the assertion of a private TCPA claim in federal court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff, which has not addressed Defendants' diversity-jurisdiction challenge in its response to Defendants' motion, brought its TCPA claim under this Court's federal-question jurisdiction, 28 U.S.C. § 1331 (*see* Dkt 1, Compl. ¶ 6; Dkt 3, 1st Amend. Compl. ¶ 6; Dkt 48, 2d Amend. Compl. ¶ 6).

2. *Federal Question Jurisdiction*

On this Court's exercise of federal-question jurisdiction, Defendants briefly argue that the Sixth Circuit's opinion in *Charvat v. NMP, LLC*, 630 F.3d 459, 462-65 (6th Cir. 2011) (holding that federal question jurisdiction exists over TCPA claims), is distinguishable from this case because *Charvat* is not a class action (Dkt 101 at 19).

Defendants' terse argument again lacks merit. Plaintiff correctly responds that the jurisdictional issue was wholly resolved by the United States Supreme Court in *Mims v. Arrow Financial Services, LLC*, ___ U.S. ___; 132 S. Ct. 740, 751-53 (2012) (holding that the TCPA's permissive grant of jurisdiction to state courts does not deprive federal district courts of federal-question jurisdiction over private TCPA suits) (Dkt 105 at 16).

E.  **Forum Non Conveniens**

Last, Defendants argue that even if this Court rejects their bases for summary judgment of Plaintiff's complaint against them, this Court should transfer the case to New York (a) for the convenience of Defendants and the "key witness," whom Defendants identify as Caroline Abraham; (b) because "the relevant evidence is located in NYC"; and (c) because the "NYC court is also available for plaintiff" (Dkt 101 at 19-20).

In response, Plaintiff opines that Defendants' arguments "do not make sense" where Abraham has been deposed and her deposition can be used at trial in this Court (Dkt 105 at 16). Moreover, Plaintiff points out that the B2B computer documents are admissible under FED. R. EVID. 803(6), or Plaintiff can certify them under Rule 902(11) (*id*., citing *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 552 (D. Md. 2007) ("Rule 902(11) also is extremely useful because it affords a means of authenticating business records under Rule 803(6), one of the most used hearsay exceptions, without the need for a witness to testify in person at trial.").

Under 28 U.S.C. § 1404(a), a court may transfer the case to another district "for the convenience of parties and witnesses, in the interest of justice" even where the plaintiff's initial venue choice is proper. However, courts normally defer to a plaintiff's choice of forum, and Defendants' arguments do not persuade this Court that its discretion would be properly exercised by transferring venue from this district, the district where Plaintiff conducts business and where a significant portion of the events allegedly took place, to a court in New York.[3]

### IV. CONCLUSION

For the foregoing reasons, the Court denies Defendants' Motion for Summary Judgment (Dkt 100). An Order consistent with this Opinion will be entered.

DATED: June 21, 2012                    /s/ Janet T. Neff
                                        JANET T. NEFF
                                        United States District Judge

---

[3]The Court notes that Defendants previously argued that this case should be transferred to California (*see* Dfs.' PMC Request, Dkt 10 at 2).

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VAN SWEDEN JEWELERS, INC.,

    Plaintiff,                                  Case No. 1:10-cv-253

v                                           HON. JANET T. NEFF

101 VT, INC., *et al.*,

    Defendants.
_____/

## **ORDER**

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Dkt 100) is DENIED.

DATED: June    , 2012

                                                          JANET T. NEFF
                                                          United States District Judge