UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


VAN SWEDEN JEWELERS, INC.,

               Plaintiff,                                     Case No. 1:10-cv-253

v                                                  HON. JANET T. NEFF

101 VT, INC., *et al.*,

               Defendants.

_____/


**OPINION**

       Plaintiff Van Sweden Jewelers, Inc., a Michigan jewelry design and manufacturing company, initiated this purported class action against Defendant 101 VT, Inc., a California jewelry design and manufacturing company, alleging that Defendants faxed Plaintiff an unsolicited advertisement and thereby violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.  Now pending before the Court is Plaintiff's Motion to Certify Class (Dkt 67), to which Defendants filed a response (Dkt 74), and Plaintiff filed a Reply (Dkt 75).  Having fully considered the written briefs and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process.  *See* W.D. Mich. LCivR 7.2(d).  For the following reasons, the Court grants Plaintiff's Motion to Certify Class and appoints Plaintiff's attorneys as class counsel.

**I.  BACKGROUND**

**A.      Factual Background**

Defendant Vatche Keledjian is the owner and president of Defendant 101 VT, Inc., which conducts business as "Viachi" (Dkt 101-1, Dfs.' Statement of Material Facts [DSMF] ¶ 2). According to Defendants, Vatche Keledjian is 101 VT's "only employee," and Defendant Vahe Keledjian is an "independent contractor" (*id.* ¶¶ 11, 59, 82).

Plaintiff alleges that on March 22, 2007, Business to Business Solutions (B2B), a fax advertising business based in New York and run by Caroline Abraham (Abraham), received a request to fax an advertisement for Defendant 101 VT, Inc.'s jewelry services (Dkt 108, Pl.'s Statement of Additional Facts [PSOAF] ¶¶ 5, 8). According to Plaintiff, Defendant 101 VT, Inc. and B2B communicated several times between March 22, 2007 and April 23, 2007, agreeing upon the advertisement's design; the number of advertisements B2B would send on 101 VT, Inc.'s behalf; and the amount 101 VT, Inc. would pay for the advertisements (*id.* ¶ 9). Plaintiff alleges that the B2B documents specifically reference "Vatche" or "Attention: Vatche" or "Viachi" as the person with whom to communicate regarding the mass fax campaign (*id.* ¶ 49).

Further, Plaintiff alleges that on April 23, 2007, B2B received a check for $420.00 from "101 VT, INC. DBA VIACHI/14 V.K.," dated April 17, 2007, and addressed to "Business to Business Solutions" (PSOAF ¶ 10). The check indicated "U012407" in the memo field, which Plaintiff alleges was the "ClientID" that B2B had assigned to Defendants (*id.* ¶ 11). According to Plaintiff, Defendants instructed B2B to wait until May 8, 2007 to send the 101 VT, Inc. advertisement by fax (*id.* ¶ 12).

Plaintiff alleges that on May 8, 2007, B2B transmitted the 101 VT, Inc. advertisements by fax and, that same day, deposited the $420.00 check from 101 VT, Inc. (PSOAF ¶ 13). Plaintiff further alleges that B2B transmitted the faxes to fax numbers in a database it had purchased from

InfoUSA (*id.* ¶ 14).  According to Plaintiff, no one sought or received prior express permission or invitation ("consent") from the recipients before sending the faxes (*id.* ¶ 15).  Plaintiff's expert, Robert Biggerstaff, reviewed B2B's archived business records, including computer files identifying 4,989 recipients of Defendants' advertisement by fax (*id.* ¶¶17-21).  The B2B documents reflect one successful transmission to Plaintiff's fax number on May 8, 2007 (*id.* ¶ 48).

Defendants, in contrast, allege that "[i]n or about March 2007, [Vatche] Keledjian requested Vahe Keledjian, an independent contractor, to look for a company designing flyers and to order such flyers to hand out and promote 101 VT's products in the upcoming (June 2007) jewelry show in Las Vegas, Nevada," that "Vahe Keledjian ordered the flyers and gave them to [Vatche] Keledjian," and that "[Vatche] Keledjian handed out the flyers at Las Vegas jewelry show in June 2007" (DSMF ¶ 59).  Defendants agree that B2B worked with Macaw (also known as Maxileads), a Romanian company, to send fax advertisements in the United States (*id.* ¶ 28).  However, Defendants emphasize that "[t]here is no facsimile machine printout confirming the receipt of the fax by Plaintiff" and "Plaintiff's fax companies, AT&T and Earthlink did not find any evidence of any fax" (*id.* ¶¶ 25, 26).  Defendants also allege that "V. Keledjian and 101 VT did not know that it is unlawful to send unsolicited fax advertisement to any recipient without prior express invitation or permission and without [an] existing business relationship" and that "[t]hey have never acted in knowing and wilful violation of the TCPA" (*id.* ¶ 24).

## B.    Procedural Posture

On March 15, 2010, Plaintiff initiated this purported class action against Defendant 101 VT, Inc., seeking to challenge Defendant's "policy and practice of faxing unsolicited advertisements" under the TCPA (Dkt 1).  The statute provides a private right of action that permits a plaintiff to seek

an injunction preventing future violations of the act and to recover actual monetary loss or $500, whichever is greater.  47 U.S.C. § 227(b)(3).  Plaintiff seeks statutory damages and an injunction against Defendants from committing additional violations (2d Amend. Compl., Dkt 48 ¶ 30).

On May 18, 2010, Plaintiff filed its First Amended Complaint to add Defendant Vatche Keledjian (Dkt 3).  Plaintiff alleges that Defendant Vatche Keledjian "approved, authorized and participated in the scheme to broadcast advertisements by facsimile by:

> A.    directing a list to be purchased or assembled;
>
> B.    directing and supervising employees or third parties to send the advertisements by fax;
>
> C.    creating and approving the form of advertisements to be sent;
>
> D.    determining the number and frequency of the facsimile transmissions; and
>
> E.    approving or paying the employees or third parties to send the advertisements by facsimile transmission"

(*id.* ¶ 9).  On March 9, 2011, Plaintiff filed a Second Amended Complaint to add Defendant Vahe Keledjian, whom Plaintiff alleges is also an officer and shareholder of 101 VT, Inc. (Dkt 48 ¶ 9).

On August 22, 2011, pursuant to the Preliminary Case Management Order (Dkt 23) issued by the Magistrate Judge, Plaintiff filed the instant Motion to Certify Class.  However, in the interests of efficiency, this Court postponed its decision on the Motion to Certify Class, permitting the parties to first brief Defendants' dispositive motion (Dkt 100).  *See* FED. R. CIV. P. 23(c)(1) (requiring only that courts decide motions for class certification "at an early practicable time"); 7AA CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1785.3 (3d ed. 2005) ("The time at which the court finds it appropriate to make its class-action determination may vary with the circumstances of the particular case.").  Having since denied Defendants' Motion for Summary

Judgment (Op. & Order, Dkts 119 & 120), the Court now turns to deciding whether this case should be certified as a class action.[1]

## II.  ANALYSIS

The Federal Rules of Civil Procedure mandate a two-step process to determine whether an action may be maintained as a class action.  First, the court must determine whether the proposed class meets the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. FED. R. CIV. P. 23.  Second, if the four prerequisites are satisfied, then the court must determine whether the proposed class falls within one of the categories of Rule 23(b).  FED. R. CIV. P. 23(b). A district court has "broad discretion in deciding whether to certify a class," *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996), but the court "may not certify any class without 'rigorous analysis' of the requirements of Rule 23."  *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc) (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).  "The party seeking the class certification bears the burden of proof."  *Am. Med. Sys.*, 75 F.3d at 1079.

A.      **Class Definition**

Before a court may certify a class pursuant to Rule 23, the threshold question is whether the proposed class definition is "sufficiently definite so that it is administratively feasible for the court

---

[1]Some of the arguments Defendants present  in their response to Plaintiff's Motion to Certify are arguments Defendants also presented in support of their Motion for Summary Judgment, to wit: their arguments that there is no admissible evidence demonstrating Plaintiff's receipt of a fax or Defendants' authorization of B2B's advertising campaign (Dkt 74 at 6-13), and their arguments challenging this Court's exercise of jurisdiction (*id.* at 18-19).  This Court has already rejected these arguments (Op. & Order, Dkts 119 & 120) and will not reiterate its reasons for doing so here, focusing instead on the remaining arguments by Defendants about whether Rule 23's requirements are satisfied.

to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, ___ F.3d ___, 2012 WL 3828036, at \*3 (6th Cir. 2012) (citing 5 James W. Moore et al., MOORE'S FEDERAL PRACTICE § 23.21[1] (3d ed. 1997) ("Although the text of Rule 23(a) is silent on the matter, a class must not only exist, the class must be susceptible of precise definition. There can be no class action if the proposed class is 'amorphous' or 'imprecise.'") (citation omitted); and *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007)).

Plaintiff seeks certification of a class of persons who were sent the 101 VT, Inc. advertisement by fax on May 8, 2007 (Dkt 68 at 6).  Specifically, Plaintiff proposes the following class description:

> All persons who were successfully sent a facsimile from "Viachi" on May 8, 2007 stating, "Looking for a Company Who Can Provide Superior Customer Service along with Superior Quality Work?" and "Visit us at JCK Las Vegas Booth # 42050 from June 01, 2007 to June 05, 2007."

(Dkt 67).  Plaintiff points out that sixteen other courts have issued persuasive opinions certifying classes involving TCPA claims about "junk faxes" sent through B2B, the fax broadcaster Defendants hired (*id.* at 6, 11-12 (collecting cases); Dkt 75 at 6 n.1 (same)).  Plaintiff requests that the Court certify this class, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as class counsel, so the merits of these claims can be resolved on a class-wide basis (*id.*).

In response, Defendants argue that it is "unfair" to place the fax recipients in one category and that Plaintiff's proposed class definition is too broad inasmuch as the definition may include fax recipients that consented to receiving the fax and fax recipients that had existing business relationships with 101 VT, Inc. (Dkt 74 at 13-14).  *See* 47 U.S.C. § 227(b)(1)(C) (prohibiting the practice of sending unsolicited fax advertisements, unless the sender of the fax has an "established

business relationship" (EBR) with the recipient). Defendants posit that Rule 23's requirements are not met and point out that there are persuasive opinions from other courts that do not support class certification in TCPA cases (Dkt 74 at 13 (collecting cases)).

Plaintiff's proposed class definition—"a class of persons who were sent the 101 VT advertisement by fax on May 8, 2007"—is objective and administratively feasible for the court to determine whether a particular individual is a member in this single-source case. Defendants' arguments concern whether they are ultimately liable to a May 8, 2007 facsimile recipient under the TCPA, not whether the proposed class member was, in fact, sent a facsimile on May 8, 2007. The Sixth Circuit Court of Appeals recently explained in *Young* that a class-defining fact overlaps with a required element of a plaintiff's claim does not make the class definition any less objective or less feasible to administer. *Young,* 2012 WL 3828036, at \*5 (opining that "allowing a determination that an individual was subject to one tax, but was charged a different tax, is no different than determining whether an individual is of a minority race or gender, required elements in class action discrimination cases and most certainly part of the class definition"). As one district court in another B2B case reasoned, "delving into issues of consent in ascertaining class membership, as would be required by inserting a requirement that class plaintiffs did not consent to receive [the defendant's] faxed advertisement, would amount to impermissibly deciding the merits of the case at class certification." *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 CV 5953, 2009 WL 2581324, at \*8 (N.D. Ill. Aug. 20, 2009). Hence, "[l]ack of consent need not be included in the class definition simply because it is incorporated into the statute under which the claim arises." *Id.*

Moreover, the Court notes that Defendants offer nothing more than speculation to support their contention that some entities on the "fax blast" list, a list allegedly culled from a database B2B

purchased from InfoUSA, should be excluded from Plaintiff's proposed class definition on the basis of consent or EBR. The Court is not convinced that speculation should defeat class certification in this case where Plaintiff has offered evidence that Defendants engaged in standardized conduct with regard to the class members—"fax blasting"— and has alleged a common injury arising out of that conduct. *See also Targin Sign Sys., Inc. v. Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894, 896-99 (N.D. Ill. 2010) (finding, in a B2B case, that there was not a "whisper about those targets, or any of them, being people who, or institutions that, had consented to Preferred's faxing them" and that "any claimed issue of consent by the faxes … is more accurately a nonissue"); *G.M. Sign,* 2009 WL 2581324, at *8 ("[T]here is no evidence in the record that any recipient of the fax consented. Rather, [B2B] simply drew the fax numbers from a third party list."); *CE Design Ltd. v. CY's Crabhouse*, 259 F.R.D. 135, 143 (N.D. Ill. 2009) ("[D]efendants took no steps to verify consent but rather simply placed the order for the fax broadcast."). The Court determines the proposed class definition is "sufficiently definite."

### B.      Rule 23(a) Requirements

1.      *Numerosity*

        The first prerequisite of Rule 23(a) is numerosity. Numerosity exists where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). A plaintiff need not prove the number of class members to a certainty. *Appoloni v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003). Courts have generally presumed that the numerosity requirement is met when the class has more than forty members. *Id.*

        Plaintiff cites archived computer data showing that 101 VT Inc.'s form advertisement was successfully sent to 4,989 persons (Dkt 68 at 9, 13). Other than again opining that Plaintiff's

evidence is insufficient (Dkt 74 at 16), an argument this Court previously addressed in denying

summary judgment, Defendants do not pose any meaningful challenge to the numerosity requirement

on the facts of this case.  The Court is satisfied that joinder of all 4,989 class members would not be

practicable and, thus, the "numerosity" requirement for the proposed class is met.

2.      *Commonality*

The second prerequisite of Rule 23(a) is that there be "questions of law or fact common to

the class."  FED. R. CIV. P. 23(a)(2).  For purposes of the commonality requirement, a court must

look for "a common issue the resolution of which will advance the litigation."  *Sprague*, 133 F.3d

at 397.  Although Rule 23(a)(2) speaks of "questions" in the plural, the Sixth Circuit has instructed

that there need be only one question common to the class.  *Id.*; *Am. Med. Sys.*, 75 F.3d at 1080.

Plaintiff emphasizes that the proposed claims derive from a common course of conduct on

the part of Defendants and that the claims present identical issues, including:

1.      the application of the TCPA and applicable FCC rules and regulations;

2.      whether the 101 VT fax is an "advertisement" as defined by the TCPA;

3.      the manner and method used to compile or obtain the list of fax numbers to which the 101 VT fax was sent;

4.      whether Defendants obtained the recipients' express permission or invitation to send the faxes;

5.      whether Plaintiff and the other class members are entitled to statutory damages;

6.      whether Defendants should be enjoined from faxing advertisements in the future; and

7.      whether Defendants' violations were knowing or willful and, if so, whether the Court should treble the statutory damages.

(Dkt 68 at 14).

Defendants argue that commonality is not present here because this Court will need to determine whether the facsimiles received were "unsolicited," or whether Defendants obtained the recipient's permission or invitation to send the facsimile; and whether the recipient received the facsimile via email and/or a computer device, which Defendants represent are modes excluded under the TCPA (Dkt 74 at 15-16). Again, Defendants' argument misses the point that the "individual determinations" they highlight are class-wide merits issues. Indeed, Defendants overlook that one of the common issues Plaintiff delineates is "whether Defendants obtained the recipients' express permission or invitation to send the faxes." The Court is satisfied that Plaintiff has met the commonality requirement for the proposed class.

3.      *Typicality*

The third prerequisite of Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). This test limits the class claims to those "fairly encompassed by the named plaintiffs' claims." *Sprague*, 133 F.3d at 399 (quoting *Am. Med. Sys.*, 75 F.3d at 1082). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Am. Med. Sys.*, 75 F.3d at 1082 (internal quotation marks omitted). Certification is improper if "[a] named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Sprague*, 133 F.3d at 399.

Plaintiff asserts its claim is typical of the claims of the other members (Dkt 68 at 15). All claims, including Plaintiff's, are based on the same legal theory, i.e., transmission of unsolicited advertising facsimiles in violation of the TCPA (*id.*). Defendants again assert that there cannot be

typicality because of the need for a case-by-case determination of issues such as consent and EBR (Dkt 74 at 17). However, the Court determines that Plaintiff's claim is "typical" inasmuch as it arises from the same course of conduct that gives rise to the claims of all other class members, and the claim is based on the same legal theory. The Court therefore concludes that the typicality requirement is met.

4.      *Adequacy of the Named Plaintiff*

The fourth and final prerequisite of Rule 23(a) is the requirement that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Rule 23(a)(4) requirement is evaluated using two criteria: "'1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)).

Regarding the first criterion, Plaintiff represents that its claim is "identical" to the claims of the other class members, "making its interests aligned with the other class members' interests" (Dkt 68 at 16), a representation Defendants do not materially dispute in their response to Plaintiff's motion.

Regarding the second criterion, the Court, in appointing class counsel,

(A)     must consider:

      (i)      the work counsel has done in identifying or investigating potential claims in the action;

      (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

      (iii)    counsel's knowledge of the applicable law; and

(iv)    the resources that counsel will commit to representing the class;

(B)    may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C)    may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D)    may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E)    may make further orders in connection with the appointment.

FED. R. CIV. P. 23(g)(1).

Plaintiff's counsel here includes Jason Thompson of Sommers Schwartz, PC; Phillip Bock of Bock & Hatch; and Brian Wanca of Anderson + Wanca. Plaintiff points out that courts have appointed them as class counsel in many actions, including but not limited to TCPA cases, and that they have recovered substantial monies for their clients and class members (Dkt 68 at 17). Plaintiff's counsel asserts that they have been litigating TCPA claims since 2003 and have prosecuted dozens of such cases to successful resolution, including many class-wide settlements (*id.,* citing, for example, *CY's Crabhouse*, 259 F.R.D. at 142 (Kennelly, J.) ("The court finds no reason to doubt the adequacy … of class counsel.…[P]laintiff's counsel's experience in TCPA class action demonstrates that counsel is adequate."). Plaintiff's counsel represents that they will continue to commit adequate resources, both staffing and monetary, to ensure that the class in this case is properly represented (*id.*).

Defendants challenge the adequacy of Plaintiff as a class representative in light of "plaintiff's attorney's unclean hands" (Dkt 74 at 11, 17-19), an argument about the procurement of B2B's data base that is apparently intended, in this class-certification context, to constitute a challenge to the

overall integrity of proposed class counsel.  According to Defendants, "plaintiff's attorneys misled Abraham and through deceit acquired the B2B hard drive materials from a particular case then initiated other cases" (*id.* at 11).  Plaintiffs also assert that "there is no evidence that any Michigan court or any court in the Sixth Circuit has appointed plaintiff's attorneys as class counsel for TCPA claims" (*id.* at 18).

However, Plaintiff's counsel *has* since been appointed class counsel in this district, in a nearly identical TCPA case.  In *American Copper & Brass, Inc. v. Lake City Indus.*, No. 1:09-cv-1162 (W.D. Mich.), a TCPA case Plaintiff's counsel brought based on the computer data obtained from B2B, the district court decided to certify the class and appoint these same attorneys representing Plaintiff as class counsel.  The district court indicated that it "considered" the challenge the defendants made to the procurement of discovery materials, concluding that "taking into account all of the circumstances, the Court believes that class counsel meets all of the requirements of FED. R. CIV. P. 23(g)(1) and will adequately represent the class." *American Copper*, 2012 WL 3027953, at *6 (W.D. Mich. July 24, 2012).  The district court also noted that Jason Thompson, one of the proposed attorneys for the proposed class in *American Copper,* and here, is not tainted by any allegation of unethical misconduct.  *Id.*

In *Reliable Money Order, Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 2012 WL 1117992 (E.D. Wis. Mar. 30, 2012), another TCPA case arising from the same B2B data base, the district court closely examined the manner in which the discovery materials were procured, reasoning the following:

> Like Judge Kennelly, I find that class counsel's behavior "was not entirely on the up and up." *Cy's Crabhouse*, 2010 WL 2365162, at *6.  However, such behavior does not create "serious doubt that counsel will represent the class loyally." *Ashford Gear*,

13

662 F.3d at 918.  Although class counsel received information from B2B with a promise of a protective order, the court in *Cy's Crabhouse* ultimately found that the information was not protected because good cause did not exist to justify keeping the materials confidential.  Whatever this court's opinion of counsel's behavior might be, such behavior does not create a serious doubt that class counsel will represent the class loyally.  The plaintiff's attorneys did not breach a promise of confidentiality with the members of the class in *Cy's Crabhouse*, or with the members of the class in *Ashford Gear*, or with the potential members of this class.  Instead, the breach was with a third party holding information regarding the illegal behavior of potential defendants. *See The Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, —— (N.D. Ohio 2012) (court found attorneys from Bock & Hatch and Anderson + Wanca adequate after reviewing prior cases of alleged impropriety and stating that the defendant had not "allege[d] improper conduct in this case.").

*Id.* at 336 (footnote omitted).

The Court agrees with the above reasoning.  Whatever this Court's opinion of counsel's behavior might be (and whatever this Court may think about the statute at issue in this case), the inquiry required by Rule 23(a)(4) is whether "it ... appear[s] that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *Am. Med. Sys.*, 75 F.3d at 1083 (quoting *Senter,* 532 F.2d at 525).  On the facts relevant to this inquiry, the Court is persuaded that Plaintiff's counsel will prosecute this case in the interest of the class.  Therefore, the Court concludes that the adequacy-of-the-named-plaintiff requirement is met.

In sum, Plaintiff's proposed class meets all four prerequisites of Rule 23(a).

## C.     Rule 23(b) Requirements

Having decided the four prerequisites are satisfied, the Court must next determine whether the proposed class falls within one of the three categories of Rule 23(b).  FED. R. CIV. P. 23(b). Plaintiff contends that certification is appropriate under the third category, FED. R. CIV. P. 23(b)(3), which requires a finding that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy" (Dkt 68 at 17).  The matters

pertinent to these findings include "(A) the class members' interests in individually controlling the

prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the

controversy already begun by or against class members; (C) the desirability or undesirability of

concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

managing a class action."  FED. R. CIV. P. 23(b)(3).

In this regard, Plaintiff points to a district court decision finding predominance because the

facsimile broadcasts at issue were sent en masse to recipients on a list of "leads" obtained from a

third party (Dkt 68 at 18, citing *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 808 (N.D.

Ill. 2008) ("resolution of the [TCPA] issues on a classwide basis, rather than in thousands of

individual lawsuits would be an efficient use of both judicial and party resources").  Defendants do

not specifically address the predominance and superiority requirements of Rule 23(b)(3) in their

response to Plaintiff's motion but presumably again rely on their prior repeated assertions that

individual inquiries predominate.

The Court agrees that resolution of the TCPA claims on a classwide basis, rather than

through thousands of individual lawsuits, is an efficient use of judicial resources and represents the

superior method of handling the claims.  Indeed, given the relatively small individual value of the

claims, the claims may never be brought.  *See, e.g., Young*,  2012 WL 3828036, at *11 (holding that

the district court did not abuse its discretion in finding that class litigation was a superior method of

adjudicating the plaintiffs' claims in light of the "unlikelihood that many injured policyholders will

discover, let alone attempt to vindicate, their injury individually").  The Court, in its discretion,

determines that the proposed class meets the predominance and superiority requirements of Rule 23(b)(3).

### III. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's Motion to Certify Class (Dkt 67). The Court will certify the following class:

> All persons who were successfully sent a facsimile from "Viachi" on May 8, 2007 stating, "Looking for a Company Who Can Provide Superior Customer Service along with Superior Quality Work?" and "Visit us at JCK Las Vegas Booth # 42050 from June 01, 2007 to June 05, 2007."

Further, the Court will appoint Jason Thompson of Sommers Schwartz, PC; Phillip Bock of Bock & Hatch; and Brian Wanca of Anderson + Wanca as class counsel. Plaintiff's counsel will be ordered to file a proposed notification form that complies with FED. R. CIV. P. 23(c), together with a statement describing the method by which the notice will be provided to class members and a list of persons to whom the notice will be sent. Finally, as the district court in *American Copper* cautioned, this Court cautions class counsel here to be aware that any claim for attorney's fees will be closely scrutinized for duplication and value of the time spent. For example, only one lawyer should attend court hearings, and requests for fees should not include research already performed in other cases. An Order consistent with this Opinion will be entered.

DATED: September 19, 2012       /s/ Janet T. Neff
                                        JANET T. NEFF
                                        United States District Judge